MARK T. PITTMAN, JUSTICE
Appellant Jerry Shad Robbins appeals from the trial court's judgment finding that he breached a fiduciary duty to his former wife Rhonda Garrett Robbins, awarding her all the net proceeds from the sale of what remained of the former marital residential property (the Property), and ordering him to pay her attorney's fees of $2,500. We reverse and render judgment that Rhonda take nothing.
I. PROCEDURAL HISTORY
A. Rhonda and Jerry Divorced in 2004.
Rhonda and Jerry divorced in June 2004. The agreed decree did not characterize the Property but contained the following provisions concerning it:
Provisions Dealing with Sale of Residence
IT IS FURTHER ORDERED AND DECREED that the property and all improvements located thereon at all that certain lot, tract or parcel of land lying and being situated in Parker County, Texas and being Lot 7, Block 2 of the Spring Branch Acres Addition Subdivision, and having a street address of 825 Highway 199 East, Springtown, Parker County, Texas shall be sold under the following terms and conditions:
1. The parties shall list the property for sale with Jim Bransom, Dunn and Elam Realtors.
2. The property shall be sold for a price that is mutually agreeable to Petitioner and Respondent. If Petitioner and Respondent are unable to agree on a sales price, on the application of either party, the property shall be sold under terms and conditions determined by a court-appointed receiver.
3. Petitioner shall continue to make all payments of principal, interest, taxes, and insurance on the property until the property is sold and Petitioner shall have the exclusive right to enjoy the use and possession of the premises until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by Petitioner.
4. The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed as follows: each party shall receive fifty percent of the net sales proceeds.
*849 B. In 2016, Rhonda Filed a Motion to Enforce the Divorce Decree and a Breach-of-Fiduciary-Duty Claim.
Almost twelve years after the divorce, in March 2016, Rhonda filed a motion for enforcement, claiming that Jerry failed to comply with the divorce decree's provisions for dealing with the sale of the Property and failed to cooperate with the selling of the Property and seeking that he be held in contempt. She also sought clarification of the decree if any part of it was found not to be "specific enough to be enforced by contempt," brought a breach-of-fiduciary-duty claim against Jerry, and requested attorney's fees, expenses, costs, and interest.
In support of her enforcement-by-contempt claim, Rhonda alleged,
• She and Jerry had mutually agreed not to sell the Property until their children had graduated from high school;
• In 2012, the house sustained fire damage, and the insurance company sent Jerry and Rhonda checks to pay off their mortgage loan and for damages to the Property;
• One check was made payable to both Jerry and Rhonda in the amount of $56,385.36;
• Jerry "willfully withheld the proceeds" from Rhonda and spent the money on illegal drugs;
• Jerry forged Rhonda's name on a $13,444.33 insurance check made payable to both, and she received less than half of the proceeds only after litigation;
• She was awarded $3,000 in attorney's fees in that case, but Jerry never paid them;
• Since Jerry kept the insurance proceeds, she could not pay to repair the Property;
• The City of Springtown ultimately condemned the Property and charged Rhonda for the demolition and house removal expenses, which she paid-$4,150; and
• Jerry was responsible for the loss in the Property's value: $109,060.00 in 2011 to $38,000 in 2016, a $71,060.00 drop.
Rhonda requested that Jerry be ordered "to fully cooperate in the sale of the [P]roperty, including but not limited to signing any and all documents necessary for the sale," and that the Property be sold with all proceeds to be awarded to her.
In her breach-of-fiduciary-duty claim, Rhonda alleged,
14. Respondent had a fiduciary duty to protect Movant's interest and not commit any acts which would damage the community property until it was sold. Respondent plotted and carried out a plan to actually defraud Petitioner. Respondent committed actual fraud by withholding disbursements from the insurance company in regards to the property from Petitioner. His willful actions lead to the property not being properly restored and led to the property decaying, having to be bulldozed, and a significant decrease in the value of the property in the amount of $71,000.00. Respondent squandered the money that was intended to be used to fix the community property on illegal drugs. Respondent has spent and wasted community funds at a time when Respondent knew or should have known that Petitioner would have objected to these expenditures. Movant should therefore receive all the proceeds from the sale of the property located at 825 E. Highway 199, Springtown, Texas.
*850 C. Jerry Filed an Answer, and the Trial Court Granted His Motion to Personally Appear at Trial.
In his pro se answer, Jerry alleged,
I do have receipts for materials and construction related work done by reputable subcontractors, vendors etc. for the residence located at 825 Hwy 199E. Springtown, TX. 76082. Said work was done after the fire that destrayed said residence. Both parties Jerry Shad Robbins and Rhonda key Ball agreed to rebuild said residence and Mr. Robbins was to be in charge of the Subcontractors and related fees associated with the construction. The paper trail will attest to such.
Jerry further stated,
• He possessed real estate contracts that Rhonda had cancelled because she would not agree to sell the Property;
• The receipts and contracts were in storage;
• The City Council had approved rebuilding the house on the Property; and
• The house under construction was torn down while he was in jail.
Jerry filed a motion for a bench warrant,[1] which the trial court granted, and Jerry appeared personally at trial.
II. THE BENCH TRIAL
A. The Trial Court Resolved Introductory Matters Before Hearing Evidence.
Jerry had filed a motion for continuance before trial, and at trial, he indicated that he was not ready to proceed because he did not have the necessary documentary evidence. The trial court "proceed[ed] anyway." At the trial court's direction, Rhonda's lawyer specified Jerry's alleged contemptible conduct: "We are asking that the court hold [Jerry] in contempt for failing to cooperate with the sale of the [P]roperty." The trial court warned that the lawyer would "have to be very specific in that regard." The trial court also pointed out that the breach-of-fiduciary-duty claim was not an enforcement claim but would, if successful, result in a civil judgment. Rhonda's lawyer spelled out the relief requested-reimbursement for Rhonda's "portion of the marital property that was damaged due to [Jerry]'s actions" and attorney's fees. Finally, at Rhonda's lawyer's request, the trial judge took judicial notice of the documents already on file.
B. Rhonda's Testimony Tracked Her Pleadings.
Rhonda testified,
• She and Jerry divorced on June 28, 2004;
*851 • The decree specified that they were to sell the Property and split the net proceeds;
• Instead, she and Jerry decided that she and their two daughters would continue to live on the Property until the younger daughter graduated from high school;
• Their younger daughter graduated in 2010;
• Rhonda moved out in 2010, and Jerry moved in;
• Rhonda and Jerry had agreed that "he would move in" and "get the house ready for sale," but "it [n]ever happened";
• The house caught on fire in May 2012;
• The house was still insured in both Jerry's and Rhonda's names because they both still owned the Property;
• She and Jerry had agreed to rebuild the house;
• She and Jerry "had agreed ... to have double signatures at the bank" and "with everything that came in, [they] were both to sign and agree to every single penny that went out";
• The insurance company issued "a couple different checks" to pay for the damage to the house;
• She signed at least one of the insurance checks;
• One of the checks was for $56,385.49;
• Rhonda never saw that check, so she called Wells Fargo, who had issued the check from the restricted escrow account;
• Rhonda learned from Jerry's bank that the check had been deposited into his account;
• Rhonda was not a signer on that account and therefore had no access to the money;
• The insurance company also issued Jerry and Rhonda a check for $13,443.33 "to fix up the [P]roperty";
• It was deposited into Jerry's account without her signature as well;
• On the day Jerry went to the bank to move the money into a construction account, she had his account seized;
• In a civil case regarding the $13,443.33 check, the court found that she was entitled to $5,916.07, court costs, and $3,000 in attorney's fees;
• The remaining funds from that check went to the bank's lawyer;
• Jerry pled guilty to forging her name on the check;
• Rhonda was not aware that the $13,443.33 check was for his personal contents in the house;
• Jerry "had hired someone to start ... fixing the house";
• A little construction had begun on the house;
• A check had been written from Jerry's account to a specific person for demolition work;
• She was not aware of cash payments to that man or of other payments for dumpsters and hauling off lumber and materials;
• She was not aware of the contractors hired to clean the bricks after the fire;
• Jerry and Rhonda agreed after the fire not to sell the Property to a certain buyer because his offer was too low, considering "the real estate value" of the Property;
• She did not remember Jerry entering into a contract with Marsha Harden to sell the Property, and she did not remember signing that contract;
*852 • Rhonda had to pay the city $4,150 to demolish and remove the house from the Property;
• The Property was worth $109,060 before the fire but $38,000 at trial, according to property tax records;
• Jerry never cooperated with getting the house repaired so she could sell the Property;
• She had been burdened with the Property since the house caught on fire because Jerry would not cooperate; and
• She wanted the trial court to order Jerry to reimburse her for her "marital property interest in the [P]roperty that [she] lost due to [his] taking the insurance money."
C. Jerry Testified that He Wanted the Property Sold.
Specifically, Jerry testified:
• He had tried to sell the Property quickly, but no one wanted to pay fair market value;
• He had a contract with a realtor to sell the Property after the fire, but Rhonda would not sign the contract;
• He "did what [he] could do to ... rebuild the house,"
• Subcontractors had worked on the house and incurred costs;
• He spent the funds from the $56,385.49 check on construction costs including demolition, dumpsters, and cleaning brick;
• Rhonda "did sign the [$13,443.33] check over" to him;
• He had planned to "put it in a construction account but" the bank froze his account on the same day;
• Even after that, he "still tried to ... sell the [P]roperty through real estate agents and other people in real estate in and around the Springtown, Azle community who could attest to" the truth of his testimony;
• He had done nothing wrong regarding the funds;
• He had "proof of where all the money went," "[a]ll the disbursement of all the funds," but not with him in court; and
• He had no access to his records because they were in a storage building and he was incarcerated.
D. Rhonda's Lawyer Testified About Attorney's Fees.
Rhonda's lawyer testified that
• She had been licensed for five and a half years;
• She billed $200 per hour;
• "On this case [she had] spent about $2,500 in attorney fees," which she "fe[lt was] reasonable and necessary and appropriate for the area based on [her] experience"; and
• She "would believe" that she could recover attorney's fees for a civil judgment under Texas statutes.
E. The Trial Court Rendered a Decision, Jerry Introduced the Topic of Appeals, and He Delivered a Deed to Rhonda's Lawyer After Asking the Trial Court if He Should .
After the testimony but still on the record, the trial court denied Rhonda's request to hold Jerry in contempt but stated that he would award her judgment for the Property and $2,500 in attorneys' fees. The following discussion then took place:
[JERRY]: Do I need to make a note to the court on the other appeal? I have copies of the appeal already prepared.
THE COURT: I can't tell you what you're supposed to do next. You do have the right to appeal.
*853 [JERRY]: Yes, and I did appeal the other judgment in the other court but evidently I never heard back from them. So I'm trying to figure out how to do this correctly[.] ...
THE COURT: Well, apparently they've issued an opinion. ...
....
THE COURT: All right. These parties are excused. Thank you.
....
[JERRY]: Do I need to give her this? This is already a warranty deed signed back in 2014 if she would have told the truth.
THE COURT: All right.
COUNSEL: I'll take it, Judge.
THE COURT: All right. Thank you.
[JERRY]: Y'all have a wonderful life.
F. In the Judgment, the Trial Court Refined Its Rendition, Not Awarding Rhonda the Property but Awarding Her 100% of the Net Sales Proceeds as Damages on Her Breach-of-Fiduciary-Duty Claim.
In its written judgment, the trial court found that Jerry had a fiduciary duty to protect Rhonda's interests in the Property and that he breached that duty.[2] The trial court ordered that the Property be sold, that Jerry cooperate fully in the sale, including signing documents necessary to complete the sale, and that Rhonda receive 100% of the proceeds of the sale as damages.[3] The trial court also ordered Jerry to pay attorney's fees of $2,500 directly to Rhonda's lawyer. The trial court denied Rhonda's motion for enforcement and did not clarify the decree. Jerry timely appealed.
III. DISCUSSION
A. Jerry Did Not Have a Fiduciary Duty to Rhonda After Their Divorce.
In Jerry's first issue, he contends that the trial court erred by finding that he breached a fiduciary duty to Rhonda because no evidence supports that finding.
1. This Issue Is Not Moot.
Rhonda argues that this issue is moot because Jerry signed a deed in 2014 granting her all his interest in the Property and delivered it to her lawyer at the trial on her motion to enforce and breach-of-fiduciary-duty claim. Voluntary payment of a judgment moots an appeal of that judgment only when the payment is made without an expressed intent to continue the appeal. BMG Direct Mktg. Inc. v. Peake , 178 S.W.3d 763, 770 (Tex. 2005) ; Brown v. Enter. Recovery Sys., Inc. , No. 02-11-00436-CV, 2013 WL 4506582, at *2 (Tex. App.-Fort Worth Aug. 22, 2013, pet. denied) (mem. op.); see also Miga v. Jensen , 96 S.W.3d 207, 211-12 (Tex. 2002).
The deed is not in evidence but is attached to Rhonda's reply brief. We may consider it in determining our own jurisdiction. See Tex. Gov't Code Ann. § 22.220 (West Supp. 2017); Miga , 96 S.W.3d at 212 ; Brown , 2013 WL 4506582, at *2 & n.7. Despite his delivery of the deed to Rhonda, Appellant expressed an intent to continue his appeal by:
• Asking about the "other appeal" [Emphasis added.];
• Indicating that he was "trying to figure out how to do this correctly";
• Asking the trial judge if he should turn the deed over to Rhonda; and *854 • Filing a timely notice of appeal.
These actions, as well as the delivery of the deed, occurred after the trial court's rendition. We therefore hold that Jerry expressed an intent to continue this appeal. Consequently, his transfer of the deed did not moot his first issue.
2. We Determine Whether Legally Sufficient Evidence Supports the Finding that Jerry Had a Fiduciary Duty to Rhonda.
A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. Catalina v. Blasdel , 881 S.W.2d 295, 297 (Tex. 1994) ; Anderson v. City of Seven Points , 806 S.W.2d 791, 794 (Tex. 1991) ; see also MBM Fin. Corp. v. Woodlands Operating Co. , 292 S.W.3d 660, 663 n.3 (Tex. 2009). When the appellate record contains a reporter's record, findings of fact on disputed issues are not conclusive and may be challenged for the sufficiency of the evidence. Sixth RMA Partners, L.P. v. Sibley , 111 S.W.3d 46, 52 (Tex. 2003) ; Allison v. Conglomerate Gas II, L.P. , No. 02-13-00205-CV, 2015 WL 5106448, at *6 (Tex. App.-Fort Worth Aug. 31, 2015, no pet.) (mem. op.). We defer to unchallenged findings of fact that are supported by some evidence. Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC , 437 S.W.3d 518, 523 (Tex. 2014).
We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. Ford Motor Co. v. Castillo , 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); Uniroyal Goodrich Tire Co. v. Martinez , 977 S.W.2d 328, 334 (Tex. 1998), cert. denied , 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500 (1999). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. Cent. Ready Mix Concrete Co. v. Islas , 228 S.W.3d 649, 651 (Tex. 2007) ; City of Keller v. Wilson , 168 S.W.3d 802, 807, 827 (Tex. 2005).
When we sustain a legal sufficiency issue, it is our duty to render judgment for the appellant because that is the judgment the trial court should have rendered. Vista Chevrolet, Inc. v. Lewis , 709 S.W.2d 176, 176 (Tex. 1986) ; see Tex. R. App. P. 43.3.
3. Jerry Did Not Owe Rhonda a Fiduciary Duty.
Generally, to prove a claim for breach of fiduciary duty, a plaintiff must prove that the defendant had a fiduciary duty to the plaintiff, breached it, and thereby caused damages to the plaintiff. First United Pentecostal Church of Beaumont v. Parker , 514 S.W.3d 214, 220 (Tex. 2017). While spouses owe fiduciary duties to one another, ex-spouses generally do not. See Solares v. Solares , 232 S.W.3d 873, 881 (Tex. App.-Dallas 2007, no pet.) (holding that "in a contested divorce where each spouse is independently represented by counsel, the fiduciary relationship terminates"); In re Marriage of Notash , 118 S.W.3d 868, 872 (Tex. App.-Texarkana 2003, no pet.) (noting that any fiduciary duty between spouses terminates upon divorce); Bass v. Bass , 790 S.W.2d 113, 119 (Tex. App.-Fort Worth 1990, no writ) ("Although marriage may bring about a fiduciary relationship, such a relationship clearly does not continue when a husband *855 and wife hire numerous independent professional counsel to represent them respectively in a contested divorce proceeding.") (citation omitted). Jerry therefore had no formal fiduciary duty to Rhonda as a matter of law.
Rhonda contends that "[a] moral and social relationship was created when [she and Jerry] decided post-divorce not to sell the home and [to] maintain it while the children finished high school" and that "[a] fiduciary duty existed for each party to not harm the other's fifty percent interest in the [P]roperty." While it is true that an informal fiduciary duty may arise from a moral, social, domestic or purely personal relationship of trust and confidence, Collins v. Kappa Sigma Fraternity , No. 02-14-00294-CV, 2017 WL 218286, at *10-12 (Tex. App.-Fort Worth Jan. 19, 2017, pet. denied), no evidence in the record before us indicates that Rhonda and Jerry had that sort of relationship after their divorce; Jerry therefore also had no informal fiduciary duty to Rhonda. See Higgins v. Higgins , 514 S.W.3d 382, 389-90 (Tex. App.-San Antonio 2017, pet. denied). We sustain Jerry's first issue.
B. The Trial Court Erred by Awarding Attorney's Fees.
In his second issue, Jerry challenges the award of attorney's fees. Attorney's fees are not available for a breach-of-fiduciary-duty claim. W. Reserve Life Assur. Co. of Ohio v. Graben , 233 S.W.3d 360, 378 (Tex. App.-Fort Worth 2007, no pet.) ; Hooks v. Hooks, No. 02-03-00263-CV, 2004 WL 1635838, at *2 (Tex. App.-Fort Worth July 22, 2004, no pet.) (mem. op.). Thus, even if we had upheld the trial court's finding that Jerry breached a fiduciary duty to Rhonda, she would not be entitled to recover attorney's fees. We sustain Jerry's second issue.
IV. CONCLUSION
Having sustained Jerry's two issues, we reverse the trial court's judgment as to Rhonda's breach-of-fiduciary-duty claim and request for attorney's fees and render judgment that Rhonda take nothing.
MEIER, J., concurs without opinion.

Jerry was serving an eighteen-year sentence for burglary. Robbins v. State , No. 02-14-00236-CR, 2015 WL 831458, at *1 (Tex. App.-Fort Worth Feb. 26, 2015, no pet.) (mem. op., not designated for publication).

No one objected to these findings appearing in the judgment.

Fifty percent of the net proceeds were already Rhonda's pursuant to the divorce decree.