

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

## No. 02-21-00056-CV

_____

IN THE INTEREST OF K.F., R.F., AND T.F., CHILDREN

---

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-458476-09

---

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

In this suit involving a parent–child relationship, Appellant T.F. (Mother) sought modification of child-support payments by Appellee R.F. (Father) for their three children, K.F., R.F., and T.F. (the Children). In the first trial on the requested modification, the trial court granted the modification, Father appealed, and we reversed and remanded for a new trial. *In re K.F.,* No. 02-18-00187-CV, 2018 WL 6816119, at *1 (Tex. App.—Fort Worth Dec. 27, 2018, pet. denied) (mem. op.). After conducting a new trial, the trial court denied the modification, and Mother now appeals. We will affirm.

### II. BACKGROUND

Part of the factual background of the parties' dispute is detailed in our prior opinion.

> In 2013, pursuant to a mediated settlement agreement, the trial court signed an agreed order (Agreed Order), which provided that Mother and Father would be the Children's joint managing conservators and that Mother had the exclusive right to designate their residence anywhere in the United States. Because Mother planned to (and did) move with the Children to Virginia, Father and Mother agreed that Father's monthly child[-]support payments would be $1,000 because Father would exclusively bear all costs of travel.
>
> After moving to Virginia, Mother remarried and moved into her new spouse's 8,000 square foot home, with its $6,000 monthly mortgage payment. In April 2017, a Virginia court signed an order (Consent Order), which, relevant to this appeal, modified the Agreed Order by altering Father's possession and access schedule. Although they disagree about the exact numbers, both Mother and Father acknowledge that the

2

Consent Order decreased the number of days that Father had possession of and access to the Children. Yet the order increased his travel costs because certain blocks of his visitation periods were broken into smaller periods of possession, thus requiring him to pay for additional travel arrangements.

In January 2017, Mother filed the underlying petition for modification of child support, seeking an increase in Father's monthly payment.

*Id.* at *1. After the first modification trial, the trial court ordered Father to pay $4,865 per month, with retroactive support. *Id.* at *2. The order also included step-down[1] provisions that reduced Father's monthly child-support payments as each child turned eighteen. *Id.*

In the appeal of that order, we noted that it was undisputed that Father's income had significantly increased from 2013 to 2016, which "alone is sufficient to establish a material and substantial change in his circumstances, permitting the trial court to modify the Agreed Order." *Id.* at *4. However, after reviewing the evidence, we stated that "the evidence is insufficient to support the finding that the Children's proven needs [were] $9,150 per month. . . ." *Id.* at *6. Therefore, we held that the trial court had abused its discretion by ordering Father to pay child support above the

---

[1]As noted in our earlier opinion, a "step-down" provision in a child support order refers to the Family Code's requirement that when a court orders support for more than one child, the order must provide for a payment decrease or "partial termination" upon the termination of support for a child—for example, when a child turns eighteen. *Id.* at *1 n.1 (citing Tex. Fam. Code Ann. § 154.127(a)).

statutory guidelines, and we reversed the modification order and remanded for a new trial. *Id.*

In August 2020, the trial court held a new trial on the motion to modify. At the beginning of the trial, Father "agreed and stipulated there has been a material and substantial change" due to his increased income. However, he disagreed that the material and substantial change alone warranted a modification.

At the second trial, five witnesses—Stepfather, Mother, Father, Mother's attorney, and Father's attorney—testified, and forty-three documents were admitted into evidence. Stepfather testified that he "pay[s] the bills" and "run[s] all of the bank accounts." Because he primarily operated and controlled the expenses in the household, Stepfather prepared spreadsheets "listing all of the expenses that we considered in this case." To prepare the spreadsheets, he went through "[b]ank statements, credit card statements, utility bills, et cetera." He included three-fifths of most expenses because "the children make up three-fifths of the household that live here[,]" and this was "the best choice of the way to split the costs." As Stepfather explained, "I took 12 months of all the bills, added them together, got a yearly - - broke it up by 12 and then divided by three-fifths." Expenses included, among other things, the house payment, utilities, and HOA dues. According to Stepfather, the expenses attributable to the Children totaled $13,097.52 per month. However, neither he nor Mother consulted Father before they bought things for the Children.

4

Mother testified regarding the Children's need for cell phones, a car, clothing, food, entertainment, medical care, dental care, and extracurricular activities. In addition to the current expenses on the spreadsheet that Stepfather prepared, she wanted to hire tutors for the Children at a cost of $600 to $700 per child per month; however, she had not discussed the tutoring with Father. On cross-examination, Mother stated that she wanted Father to pay for each child to have an iPhone; a rental car when Mother and one of the Children "flew to Arizona to meet with her shot put and discus coach"; expenses at Tropical Smoothie cafe, Main Event, FragranceNet.com, Hampton Inn & Suites, and Bath & Body Works; portions of the monthly pest control and the dog's expenses; expenses at Victoria Nails for one child to get her nails done; an Xbox Live Gold membership; and fishing lures for one of the Children. Mother admitted that Father pays the travel expenses to see the Children, both bringing them to Texas and going to Virginia to see them.

Also on cross-examination, Father's attorney pointed out to Mother that at the first trial, Mother had testified that she does not want to have to ask Father about any expenses related to the Children. At the second trial, Mother testified similarly:

> [Father's attorney] Q. It's true, ma'am, just like in the trial in 2017, that you would like [Father] to pay for the expenses of the children and you can make all of those decisions; is that correct?
>
> [Mother] A. Yes.
>
> Q. And you don't want to ever be ordered or have to consult with him about any of these decisions, right?

5

A. That's correct.

Father testified that his income had dramatically increased since 2013. When he signed the 2013 agreement, his income was "eighty-five, maybe a hundred and ten, something like that" annually. At the time of the second trial, his net monthly income was a little over $100,000 a month. Father testified that Mother's income had also increased to "two fifty" annually. Father's income had gone up approximately 1000 percent, and Mother's income had gone up approximately 150 percent. He said that he pays travel expenses in relation to seeing the Children and bringing them to Texas, as well as the expenses for them when they are together. In addition, Father pays for all of the Children's health insurance.

Father asked the trial court to consider that Mother did not consult with him about any of the Children's expenses. Due to the prior agreement, the travel expenses, and the co-parenting issues, Father asked the trial court to keep his child support at $1,000 a month.

As noted above, the trial court admitted numerous exhibits offered by Mother and Father. Mother's admitted exhibits included a summary of her requested relief; her attorney's fees summary and billing statements; the spreadsheet prepared by Stepfather; statements from Verizon, Costco Visa, Dominion Energy Virginia, Vivint Home Security, Navy Federal Credit Union, National Propane Buyer's Cooperative, and Wells Fargo Visa; a USAA auto-insurance policy (covering four vehicles); a transaction history for a 2018 Ford Edge; medical and dental bills; and an email

6

regarding tutoring. Father's admitted exhibits included a summary of his requested relief; his attorney's fees summary, billing statements, and fee agreement; a Texas Attorney General child-support payment record; a copy of *In re K.F.* and excerpts from the opinion; the 2013 Agreed Order and the first modification order; Father's financial information, earnings statement, and IRS documents; Mother's discovery responses; Mother's summary of expenses from the first and second trial; excerpts of Mother's testimony from the first trial; three 2017 Virginia Consent Orders (one for each child); a summary of child-support overpayments; Father's trial brief; Our Family Wizard message excerpts; copies of various trial court pleadings; and the testimony and exhibits from the first trial.

At the conclusion of the trial, the trial court stated,

[T]he Court finds that the parties entered into an agreement back in 2013 for the payment of child support and for the needs of the . . . children and that agreement was entered into with the assistance of counsel [of] both parties. The Court finds that it was foreseeable that the income of both parties could either increase or decrease, and that an agreement was entered into with that foreseeability in mind. Thereby, the Court finds that there has not been a material change in circumstances concerning the children as the parties agreed to and entered into an amount of child support below the guidelines with the understanding that the father would pay for costs of travel both ways for visitation.

Thereafter, the trial court signed an order denying Mother's motion to modify child support, ordering Father to pay child support in the amount of $1,000 a month, terminating the order requiring the withholding from Father's earnings, crediting the

overage of child support that Father had paid to his current child-support obligation, and ordering Father to maintain health and dental insurance for the Children.

Mother requested, and the trial court entered, findings of fact and conclusions of law, including the following:

> 5. The specific reason that the amount of child support per month ordered by the Court varies from the amount computed by applying the percentage guidelines of Section 154.125 of the Texas Family Code is: the 2013 agreement of the parties.
>
> 6. [Father] has continued to operate under the agreement of the parties and a unilateral revocation of their agreement is not in the best interest of the children.
>
> 7. [Father] has been maintaining and is willing to continue to maintain the children's health insurance.
>
> 8. It is in the best interest of the children that [Father] continue to pay $1,000 per month in child support.
>
> 9. It is in the best interest of the children that [Father] continue to maintain health insurance for the children.

Neither the findings nor the conclusions addressed whether a material and substantial change occurred, and no request for additional findings and conclusions was made. This appeal followed.

## III. DISCUSSION

In four issues, Mother challenges the trial court's denial of her motion to modify. Issues one through three complain that the trial court "erred by finding that no material and substantial change had occurred" because (1) the parties had already stipulated to the change, (2) the law-of-the-case doctrine requires that the trial court

8

abide by the earlier appellate ruling, and (3) the finding was not supported by legally or factually sufficient evidence.[2] Issue four contends that the trial court erred by finding that it was in the Children's best interest that the child support not be modified "as that was not supported by legally and factually sufficient evidence."

## A. Standard of Review

We review the trial court's orders regarding child-support modification for an abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied). A trial court abuses its discretion if it acts arbitrarily or unreasonably or does not analyze the law properly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

The legal and factual sufficiency of the evidence supporting the modification order are not independent grounds for asserting error but are relevant factors in deciding whether the trial court abused its discretion. *T.D.C.*, 91 S.W.3d at 872. We review the evidence in the light most favorable to the court's modification ruling and indulge every presumption in the ruling's favor. *In re J.D.D.*, 242 S.W.3d 916, 920 (Tex. App.—Dallas 2008, pet. denied).

When a trial court issues findings of fact, as it did here, those findings are subject to review under the same legal and factual sufficiency standards as jury findings. *Robbins v. Robbins*, 550 S.W.3d 846, 854 (Tex. App.—Fort Worth 2018, no

---

[2]Since Mother's first three issues all address "material and substantial change," we will discuss those issues together.

pet.). The findings of fact have the same force and dignity as a jury's answers to jury questions. *In re M.K.R.*, 216 S.W.3d 58, 61–62 (Tex. App.—Fort Worth 2007, no pet.) (citing *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)). The conclusions of law may not be challenged for factual sufficiency, but they may be reviewed to determine their correctness based upon the facts. *Id.* at 62 (citing *Dominey v. Unknown Heirs & Legal Reps. of Lokomski*, 172 S.W.3d 67, 71 (Tex. App.—Fort Worth 2005, no pet.)).

## B. Applicable Law

When parents have entered into an agreed support order that is different from the amount required by the child-support guidelines, the trial court has discretion to modify the support order "only if the circumstances of the child or a person affected by the order have materially and substantially changed since the date of the order's rendition." *K.F.*, 2018 WL 6816119, at *4 (quoting Tex. Fam. Code Ann. § 156.401(a–1)). The trial court determines whether a material and substantial change has occurred by comparing the circumstances at the time of the initial order with those at the time the modification is sought. *Id.* (citing *In re Moore*, 511 S.W.3d 278, 283 (Tex. App.—Dallas 2016, no pet.)). A trial court is not required to modify an order to conform with statutory guidelines and, in fact, may do so only if it determines that the modification would be in the child's best interest. *Clark v. Clark*, No. 03-20-00411-CV, 2021 WL 3775565, at *3 (Tex. App.—Austin Aug. 26, 2021, no pet.) (mem. op.) (citing Tex. Fam. Code Ann. § 156.402(b)). In determining whether

10

to modify child support, the trial court's primary consideration is always the best interest of the child. *Id.* (citing *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 666 (Tex. App.—Houston [14th Dist.] 2011, no pet.)).

## C. Application of Law to Facts

### 1. Material and Substantial Change

As the basis of her first three issues regarding material and substantial change, Mother relies on the trial court's comment at the conclusion of the trial "that there has not been a material change in circumstances concerning the children." However, as Father notes, the trial court did not make this finding in its written findings of fact, and Mother did not request additional findings regarding material and substantial change.

It is well settled that an appellate court is "not entitled to look to any comments that the judge may have made at the conclusion of a bench trial as being a substitute for findings of fact and conclusions of law." *Spiers v. Maples*, 970 S.W.2d 166, 170 (Tex. App.—Fort Worth 1998, no pet.) (citing *In re W.E.R.*, 669 S.W.2d 716 (Tex. 1984)). Neither may such comments substitute for written findings of fact and conclusions of law or limit the grounds upon which a ruling can be upheld. *Westminster Falcon/Trinity L.L.P. v. Chong Shin*, No. 07-11-0033-CV, 2012 WL 5231851, at *4 (Tex. App.—Amarillo Oct. 23, 2012, no pet.) (mem. op.).

Findings of fact and conclusions of law were entered in this case pursuant to Texas Rules of Civil Procedure 296 and 297. Tex. R. Civ. P. 296, 297. A court is also

required to make specific findings when "rendering an order of child support." Tex. Fam. Code Ann. § 154.130(a). But the specific Family Code findings are not required when a motion to modify is denied. *See Rumscheidt*, 362 S.W.3d at 664–65 (holding that when a motion to modify child support is denied, the trial court is not required to make the specific statutory findings required under Family Code Section 154.130, but it is required to file findings and conclusions when timely and properly requested under Texas Rules of Civil Procedure 296 and 297); *In re J.A.H.*, 311 S.W.3d 536, 543 (Tex. App.—El Paso 2009, no pet.).

Here, while several findings addressed the best interest of the Children, the trial court did not make a finding or conclusion related to material and substantial change, and Mother did not request additional findings. *See* Tex. R. Civ. P. 298 ("After the court files original findings of fact and conclusions of law, any party may file with the clerk of the court a request for specified additional or amended findings or conclusions."). The failure to request amended or additional findings or conclusions waives the right to complain on appeal about the trial court's failure to make the omitted findings or conclusions. *Villalpando v. Villalpando*, 480 S.W.3d 801, 810 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Because Mother failed to request a finding on material and substantial change, she cannot now complain about this part of the trial court's ruling.[3] *See Smith v. Smith*,

---

[3]In any event, Father does not dispute that a material and substantial change has occurred. At the beginning of the second trial, Father's counsel stated, "On top

12

22 S.W.3d 140, 149 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding party waived his right to complain on appeal about any error he assumed the court made by failing to request additional findings of fact and conclusions of law). Therefore, issues one, two and three are overruled.

## 2. Best Interest

In her fourth issue, Mother contends that the trial court's best-interest finding was not supported by legally and factually sufficient evidence. We disagree.

To support a modification of child support, in addition to proving that there has been a material and substantial change since the date of the child support order, Mother was required to prove the second element—best interest.[4] *See* Tex. Fam. Code Ann. §§ 156.002, .401; *see also id.* § 156.402(b) ("If the amount of support contained in the order does not substantially conform with the guidelines for single

---

of that, we actually stipulated to the summary judgment filed by [Mother's counsel] back in May, that there was a material and substantial change. I am not arguing that today. I agree with [Mother's counsel] on that." In his appellate brief, citing to Family Code Section 156.401(a–1), Father agrees that "the first element that Mother needed to prove was satisfied."

[4]Father argues that Mother has conceded this element with the following statement in her appellate brief: "No evidence was presented regarding the best interests of the children as [it] relates to whether or not a modification should be granted." Because Mother's statement occurs in a section entitled "Insufficient Evidence to Support a Denial of Modification," we will not treat her statement as a concession that she failed to meet her burden of proof. *See* Tex. R. App. P. 38.9; *Coburn v. Moreland*, 433 S.W.3d 809, 827 (Tex. App.—Austin 2014, no pet.) (stating that the party seeking modification of a prior child-support order has the burden to establish all elements by a preponderance of the evidence).

and multiple families under Chapter 154, the court may modify the order to substantially conform with the guidelines if the modification is in the best interest of the child."); *Iliff*, 339 S.W.3d at 81 ("Moreover, in child support decisions, the 'paramount guiding principle' of the trial court should always be the best interest of the child."); *In re S.C.*, No. 02-17-00377-CV, 2018 WL 5289370, at *3 (Tex. App.—Fort Worth Oct. 25, 2018, no pet.) (mem. op.) (holding that a court may modify a child-support order if the circumstances of the child or a person affected by the order have materially and substantially changed and if the modification is in the child's best interest).

As we explained in our first opinion, once the court determines that a material and substantial change has occurred, the trial court has discretion to alter the amount of child support accordingly. *See K.F.*, 2018 WL 6816119, at *4 (citing *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 578 (Tex. App.—Houston [1st Dist.] 1997, pet. denied)). However, in no event may the court require the obligor to pay more than 100% of the proven needs of the child. *Id.* (citing Tex. Fam. Code Ann. § 154.126(b)).

What constitutes "needs" of the child has not been defined by statute. *In re C.A.W.*, No. 14-16-00768-CV, 2017 WL 3927235, at *4 (Tex. App.—Houston [14th Dist.] Sept. 7, 2017, no pet.) (mem. op.). However, the child's needs should be separated from those of the parent. *Id.* (citing *Lide v. Lide*, 116 S.W.3d 147, 158 (Tex. App.—El Paso 2003, no pet.)).

14

In the first trial, the trial court made a finding that the Children's proven monthly needs were $9,150. *K.F.*, 2018 WL 6816119, at *5. "But the only evidence in the record to support such a finding was a spreadsheet of current expenses and Mother's corresponding conclusory testimony about proven needs on direct examination." *Id.* (footnote omitted). And as we noted, "monthly expenses and proven needs are not the same thing"; thus, "conclusory testimony regurgitating the contents of the spreadsheet of monthly expenses was insufficient to establish that those amounts reflected needs of the children warranting an increased amount of child support beyond the statutory guidelines." *Id.*

In her brief, Mother summarizes how she met her best-interest burden:

> The great weight of the evidence shows that Father makes over a million dollars annually (which is more than ten times what he was making seven years prior when the previous order was entered), admitted on record that he can easily pay any and all expenses for his children (he just wants to pay the ones he deems reasonable, though and does not want Mother to have control over this), and that these parents co-parent poorly. No reasonable person could conclude that an award of $1,000 per month for three children, which is less than 1% of his net monthly resources, a deviation from the guidelines, is somehow in the best interest of the children. [Citations to record omitted.]

However, Father argues that this analysis ignores (1) the parties prior agreement, including the testimony from the prior trial regarding why the parties made the agreement; (2) that Father paid the travel expenses for visitation, some of the Children's expenses directly, and the Children's expenses when they were with him; (3) that Mother did not consult with Father about any expense but wanted him to pay

15

for everything; (4) that Mother was unwilling to work with Father regarding visitation changes; and (5) that Father was willing to pay the Children's health insurance.

### a. 2013 Order

In the findings of fact, the trial court stated that "[t]he specific reason that the amount of child support per month ordered by the Court varies from the amount computed by applying the percentage guidelines of Section 154.125 of the Texas Family Code is: the 2013 agreement of the parties." The trial court further found that "Father has continued to operate under the agreement of the parties and a unilateral revocation of their agreement is not in the best interest of the children."

The 2013 Agreed Order, which was signed by all parties and their attorneys, set child support at $1,000 per month. The Agreed Order was based on a Mediated Settlement Agreement, also signed by all parties and their attorneys, that stated, "Child support is below guideline to compensate for Father's payment of children's travel expenses for Father's possession & access periods."

At the second trial, the transcript from the first trial was admitted, which included the testimony from Mother about the reason for the 2013 Agreed Order:

> Q. [B]ack in 2013, you and [Father] agreed that [Father] would pay below guideline child support; is that right?
>
> A. Yes, it is.
>
> Q. And the reason for that - - and this is for the record - - is the Court made a finding that, ". . . taking into account the best interest of the children and the increased expenses of exercising possession of or access to the children resulting from [Mother's] change of residence and

the parties' agreement," that he would pay child support below guidelines, right?

A. That's what the document says.

Q. And part of this agreement was that you and the children could move to Virginia. That was all in the same agreement.

A. Yes.

Q. And you still live in Virginia, and you've lived in Virginia since 2013 when we made this agreement, right?

A. Yes.

. . . .

Q. And he still pays all the travel expenses now?

A. Yes.

At the second trial, Mother testified that Father had continued to pay the Children's travel expenses for visitation purposes. Father testified similarly:

Q. And in that [2013] agreed order, was there an agreement that your child support would be below guideline with regards to the fact that you had to pay expenses for the children relocating to Virginia?

A. Correct.

At the second trial, Father testified that he wanted the trial court to "take into consideration these agreements and the travel expenses" in ruling on the motion to modify.

17

### b. Children's Needs/Best Interest

The trial court's findings of fact stated, "It is in the best interest of the children that [Father] continue to pay $1,000 per month in child support." In addition, "It is in the best interest of the children that [Father] continue to maintain health insurance for the children."

In the second trial, Mother presented evidence that the monthly needs of the Children had increased to $13,097.52. And like in the first trial, a spreadsheet of household expenses was admitted into evidence. As Stepfather explained, to arrive at the number for the Children's needs, he "took 12 months of all the bills, added them together, got a yearly - - broke it up by 12 and then divided by three-fifths." While the spreadsheet included categories such as house payment, utilities, and vehicle insurance, it also included categories described as "Pet Care/Gifts/Charity/Decorating," "Lessons for Boys," and "Entertainment."

Testimony and exhibits presented at the second trial were similar to those presented at the first trial. After Mother presented her testimony and evidence at the second trial, Father testified that Mother was "asking for the same expenses related to her house and lifestyle that she asked for at the previous trial in 2017."

### c. Analysis

From the record and the findings, it is clear that the trial court believed that the parties should adhere to their 2013 Agreed Order. The reason for the below-guideline child support—because Father had to pay for all of the travel expenses once the

Children moved to Virginia—was set forth in the Mediated Settlement Agreement as well as the testimony of Mother and Father in the first and second trials. That fact had remained constant since entry of the Agreed Order.

In addition, the second trial consisted of testimony and evidence similar to that admitted at the first trial. It was essentially a request that Father pay three-fifths of all household expenses. However, the testimony regarding the expenses of the Children was, as stated in the earlier opinion, "tied to [Mother's] lifestyle change associated with the new marriage and upgraded housing, which is insufficient to permit a child support award above the statutory guidelines." *K.F.*, 2018 WL 6816119, at *5. In the second trial, Mother maintained her belief that Father should pay for the Children's expenses while Mother made all decisions about the expenses. And the second trial continued to focus heavily on Father's increased earnings. *See id.* ("Our review of the trial record reveals that the trial testimony focused more on Father's increased earnings rather than on the needs of the Children."). While Mother argues on appeal that there was no evidence to support a "no-change ruling," the burden was on Mother to offer evidence to support her request for the modification of child support. *See In re A.A.T.*, 583 S.W.3d 914, 920 (Tex. App—El Paso 2019, no pet.).

From this record, we cannot say that the trial court abused its discretion in denying Mother's motion to modify Father's child-support obligation. *See Worford*, 801 S.W.2d at 109 (holding that an order regarding child support will not be disturbed on appeal unless the complaining party can demonstrate a clear abuse of discretion);

19

*In re R.D.*, No. 02-04-165-CV, 2005 WL 503055, at \*2 (Tex. App.—Fort Worth Mar. 3, 2005, no pet.) (mem. op.) ("In sum, the trial court retains broad discretion in making the equitable decision of whether to modify a prior child[-]support order."). Therefore, we overrule Mother's fourth issue.

## IV. CONCLUSION

Having overruled all of Mother's issues, we affirm the trial court's order denying the modification of child support.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  December 2, 2021