**Reversed and Remanded in Part, Affirmed as Modified in Part, and Memorandum Opinion filed October 10, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00263-CV

---

## LAUREL WENDT, Appellant

## V.

## EVALYN WENDT MOORE, AMILEE WENDT, AND JACKIE WENDT MARTIN, Appellees

---

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 18-DCV-254438**

---

## M E M O R A N D U M   O P I N I O N

This appeal concerns a dispute among four sisters regarding tracts of farmland given to them by their now deceased parents. In each gift deed from the parents, each of the four sisters received a 1/4 interest as cotenants in the conveyed tracts. The deeds also granted each sister a right of first refusal to purchase any property interest in a tract being sold by another sister. Disagreements arose between the sisters concerning the property and the family-owned partnership that

ran farm operations, E.A.J.L. Wendt Farms. Three of the sisters (hereinafter "appellees") sued the other sister, Laurel, and she filed counterclaims, including claims involving E.A.J.L.

Prior to trial, the parties entered into a Mediated Settlement Agreement ("the MSA"), which was filed with and subsequently approved by the court as a Rule 11 agreement. The MSA resolved several of the disputes between the parties, provided for the partition of the tracts among the sisters, required Laurel to lease the improvements on the "Headquarters Tract" to a third party, and provided that there would be a cash payment in the event the divided properties were not of equivalent value. Laurel also nonsuited her claims concerning E.A.J.L., although the trial court had ordered all possible claims regarding E.A.J.L. to be brought in the lawsuit.

The case proceeded to trial on the question of whether Laurel properly exercised her right of first refusal to purchase "Tract 15," among other things. In its final judgment, the trial court held, among other things, that Laurel had not properly exercised her right to purchase Tract 15, ordered her to pay attorney's fees to appellees, ordered appellees to reimburse E.A.J.L. for some of those attorney's fees, determined the boundaries for the Headquarters Tract, and set the amount of the "true-up" payment that Laurel was required to make to the other sisters as well as the amount of the supersedeas bond should Laurel file an appeal.

In eight issues on appeal, Laurel contends that the trial court erred in (1) failing to fully incorporate the MSA into the final judgment; (2) determining that Laurel had not properly exercised her right of first refusal to purchase Tract 15; (3) ordering her to pay appellees' attorney's fees; (4) setting the amount of the supersedeas bond; (5) ordering appellees to reimburse E.A.J.L. out of the attorney's fees awarded to appellees; (6) denying Laurel's objection to E.A.J.L.'s

2

participation in the case; (7) determining the boundaries of the Headquarters Tract; and (8) determining the amount of the "true-up" payment that Laurel was required to make to the other sisters. As detailed below, we will modify the judgment in several respects, suggest a remittitur on the award of attorney's fees, and affirm the judgment as modified.

## *Background*

In a series of gift deeds spanning decades, Jack and Billie Wendt conveyed 15 tracts of land totaling nearly 3000 acres in Fort Bend County to their four daughters. Most of the gift deeds included a majority rule clause and a right of first refusal clause and granted each of the daughters a 1/4 interest in the property being conveyed. The daughters formed a general partnership, E.A.J.L., to run business operations related to the tracts and take ownership of improvements on the property. After many years, three of the sisters, appellees, decided that they wanted to sell the property, but the fourth daughter, Laurel, did not want to sell. Disagreements escalated from there.

In August 2018, appellees filed the present lawsuit, asserting that Laurel had refused to cooperate with the decision to sell the Wendt farm in violation of the majority rule clause contained in the gift deeds. Appellees sought declaratory relief, including a declaration that Laurel was obligated by the majority rule clause to join in a sale of the property, failure to join would be a breach of the gift deeds, and appellees were entitled to specific performance. In the alternative, appellees stated a claim for breach or anticipatory breach of contract, asserting that the gift deeds constituted a contract between the sisters and Laurel's rejection of the attempt to sell the property was a breach or anticipatory breach thereof. Appellees again asserted that they were entitled to specific performance, or in the alternative, that Laurel should forfeit her 1/4 interest in the property, or in the alternative, that

3

appellees were entitled to damages equal to the lost sales value.

As an alternative to either the declaratory judgment action or the breach action, appellees also pleaded a claim for a partition of the property such that appellees' interests would be separated from Laurel's interest so that appellees' interests could be sold. As yet another alternative, appellees requested the property be ordered sold and the proceeds partitioned between the sisters. Under the heading "Damages," appellees stated that they "seek monetary relief of $100,000 or more and non-monetary relief."

In her first amended answer and special exceptions, Laurel stated a general denial as well as numerous affirmative defenses, including estoppel, waiver, ratification, laches, statute of frauds, mistake, unilateral mistake, and unclean hands. She additionally "specially except[ed] to [appellees'] pleading not providing notice of any specific conduct or factual event for which the Court will be requested to" provide relief.

In a counter-petition, Laurel raised allegations regarding an offer to purchase Tract 15 of the Wendt Farm by Frank and Nancy Stasney and Laurel's right of first refusal to purchase the tract on the same terms as offered by the Stasneys. She additionally made claims regarding the management and alleged misuse of E.A.J.L., the family-owned partnership that ran farm operations. On the basis of such claims, she sought a declaratory judgment, injunctive relief, and attorney's fees.

On April 29, 2021, appellees filed a motion for partial summary judgment regarding Laurel's Tract 15 claims. Laurel filed her response on May 20, 2021, and the parties executed the MSA on May 24, 2021.

The MSA states that it was executed "in connection with the partial

4

settlement of the lawsuit." The MSA expressly did not settle any portion of the lawsuit relating to Tract 15 but reserved that issue for resolution by the trial court. The MSA further provided for a partition of the farm properties such that Laurel would receive certain tracts and appellees would receive certain tracts. As will be discussed more fully below, the MSA required Laurel to lease "the headquarters improvements" to Frank Stasney for as long as Tract 7 was used for rice growing by appellees, their first transferee, or tenants. Additionally, the parties agreed in the MSA to obtain three appraisals from a specified appraiser with the aim that each of the four sisters would receive equivalent dollar value in the partition of the property, even if that required a cash payment from Laurel to appellees or appellees to Laurel. Laurel additionally agreed to dismiss her counterclaims related to E.A.J.L. and against appellees, with the caveat that neither Laurel nor appellees "have released any future claim for an accounting for past business operations of E.A.J.L." Appellees agreed to pay certain money back to E.A.J.L. and also agreed to dismiss their claims against Laurel except in regard to Tract 15. The parties agreed to make good faith efforts to complete the appraisals, settlement documents, and transfer deeds within 90 days unless extended by mutual agreement or by the mediator. Toward the end of the MSA, it provides as follows:

> Save and except for the Tract 15 exception, any future claim for an accounting for past business operations pertaining to EAJL [sic], or the cattle operation of the parties, the parties will sign a mutual general release. It is the intention of the parties to resolve all claims and causes of actions that currently exist relating to this dispute.

The trial court subsequently approved the MSA. Meanwhile, Laurel filed another lawsuit involving the same parties, which the trial court consolidated into this lawsuit. Laurel also filed an application for a temporary injunction requesting emergency relief relating to the business operations of E.A.J.L.; after which, the trial court ordered E.A.J.L. to be added as a party. Laurel subsequently expressly

5

nonsuited all claims that could be interpreted as being against E.A.J.L. Laurel also stipulated prior to trial to several requests for declarations that appellees had made, including regarding the effect of the clauses in the gift deeds.

Trial commenced on January 12, 2022, and covered a number of issues, including whether Laurel properly exercised her right of first refusal to buy Tract 15, the partition of the tracts between the parties, the amount of the "true-up" payment, the lease of the Headquarters Tract, and legal fees.

In its final judgment, among other things, the trial court held that Laurel had not properly exercised her right to purchase Tract 15 and breached the gift deed clauses by failing to join the sale to the Stasneys, ordered Laurel to pay attorney's fees in the amount of $251,810.36 to appellees, ordered appellees to reimburse E.A.J.L. for $104,418 of those attorney's fees, determined the boundaries for the Headquarters Tract, and set the amount of the "true-up" payment that Laurel was required to make to the other sisters, as well as the amount of the supersedeas bond should Laurel file an appeal. Additionally, in the judgment, the trial court enforced the partition of the tracts between the parties as set forth in the MSA, ordered appellees to deposit a $200,000 check in E.A.J.L.'s safety deposit box into its general operating account, and ordered that all claims that were brought or could have been brought against E.A.J.L. or its partners were dismissed and that Laurel take nothing on any claims she pleaded or that were in existence at the time the judgment was entered that were not otherwise disposed in the judgment. As will be discussed in more detail below, after judgment was entered and during the pendency of this appeal, Tract 15 was apparently sold to the Stasneys and Laurel made payments to appellees on certain claims.

### Discussion

We will begin our analysis by considering Laurel's second issue concerning

the dispute over Tract 15. We will then turn to issue three on attorney's fees before considering the issues related to E.A.J.L.'s participation in the case—issues one, five, and six. Finally, we will consider her fourth issue on the supersedeas bond, seventh issue relating to the Headquarters Tract, and eighth issue on the value of the "true-up" payment.

## I. Tract 15

In her second issue, Laurel contends that the trial court erred in determining that she did not effectively exercise her right of first refusal to purchase Tract 15 when the Stasneys made an offer to purchase the tract. This issue was sharply contested in the trial court and concerned questions of whether appellees properly notified Laurel about the Stasneys' offer and whether Laurel timely exercised her right to purchase the property on the same terms as the Stasneys offered. In response to this issue, appellees argue, among other things, that the issue has been rendered moot in light of the fact that after judgment was entered in this case, Laurel and her sisters conveyed their interests in Tract 15 to the Stasneys in exchange for monetary compensation, thus fulfilling the part of the judgment that ordered completion of that transaction. *See generally Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000) (per curiam) (holding appeal of trial court's order became moot once appellant complied with order and court of appeals was notified of compliance); *Thompson v. Ricardo*, 269 S.W.3d 100, 103 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[I]f a judgment cannot have a practical effect on an existing controversy, the case is moot and any opinion issued on the merits in the appeal would constitute an impermissible advisory opinion.").

In her reply brief and at oral argument, Laurel conceded that such a transaction occurred, but she urged this court to order the transaction with the Stasneys undone and the property ordered sold to her instead. Laurel insisted that

the Stasneys were not "bona fide purchaser[s] for value" because they knew the litigation was ongoing and an appeal had been filed. She conceded, however, that there was no correspondence or other paperwork to establish the Stasneys' knowledge regarding the appeal, but she still asserted that they were not "strangers" and were aware.

Laurel likens this issue to the situation that occurs when a judgment debtor satisfies a judgment in order to avoid any penalties or interest that might accrue while the case is being appealed, citing *Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2003) (*Miga I*) ("One must be able to halt the accrual of postjudgment interest, yet still preserve appellate rights."), and *Riner v. Briargrove Park Property Owners Inc.*, 858 S.W.2d 370, 371 (Tex. 1993) ("[I]f a party does not voluntarily pay a judgment, his appeal is not moot.").

The current situation, however, does not fit neatly within the *Miga I/Riner* line of cases. The satisfaction of the judgment at issue here was not simply payment of an amount due under the judgment or even a transaction between the parties to the case; it was a real property transaction that conveyed property owned jointly by the parties to third parties who were not directly involved in the litigation. Laurel does not cite any authority, and we are not aware of any, that would permit a court to order a real property transaction with a third party undone when there is no evidence that the third party purchased the property on a contingency basis. *See generally Miga v. Jensen*, 299 S.W.3d 98, 101 (Tex. 2009) (*Miga II*) (discussing restitution after reversal on appeal); Restatement (Third) of Restitution and Unjust Enrichment § 18 (same), cmt. f (discussing the possibility of restitution after an execution sale, which, of course, the sale to the Stasneys was not), & cmt. g (discussing the availability or unavailability of relief against a bona fide purchaser) (2011). Nor has Laurel pointed to any evidence that the sale to the

Stasneys was made contingent on the outcome of the appeal or even any evidence to support the assertion that the Stasneys were aware of the appeal.

In short, this issue is no longer viable in this appeal. Accordingly, we overrule Laurel's second issue. We take no position on whether or under what circumstances such a transaction could be undone upon a reversal in an appeal that concerned the property as such would constitute an impermissible advisory opinion. *See, e.g.*, *Elec. Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 635 (Tex. 2021).

## II. Attorney's Fees

In her third issue, Laurel asserts that the trial court erred in ordering her to pay appellees' attorney's fees. Under this issue, Laurel raises several arguments regarding the attorney's fees award, including that appellees failed to segregate their fees between claims on which attorney's fees were recoverable and claims on which fees were not recoverable, appellees failed to establish that the fees requested were reasonable and necessary, the issue of fees was resolved when the parties signed the MSA, and appellees did not recover breach of contract damages such as would support an award of attorney's fees for that claim. Appellees also make several responsive arguments on this issue, including that they were not required to segregate their fees because certain legal services advanced both recoverable and unrecoverable claims that were intertwined; the MSA did not resolve the question of attorney's fees; even after the MSA, appellees were compelled to expend attorney's fees to seek enforcement of the agreement; the trial court acted within its discretion in awarding fees under the Declaratory Judgments Act; appellees did recover on their breach of contract claims; and this issue was rendered moot when Laurel paid appellees' fees postjudgment. As will be discussed below, we conclude that appellees were entitled to recover only those

attorney's fees expended in regards to the Tract 15 issues that were reserved in the MSA and ultimately resolved by the trial court. Accordingly, we will modify the judgment to reflect an award of only those fees.

In its final judgment, the trial court ordered Laurel to pay appellees' attorney's fees of $251,810.36. This number is almost identical to the amount listed on a spreadsheet of attorney's fees and costs admitted as plaintiffs' exhibit 50 and as testified to by appellees' lead attorney. The spreadsheet shows the combined total amount of fees incurred in the lawsuit (including amounts for "General" work, "Tract 15," "Costs," and the second lawsuit that was consolidated into the present lawsuit) as $251,810.06. The spreadsheet also attributes a specific amount of fees to the Tract 15 dispute, that being $104,418. It is unclear why the judgment contains an additional 30 cents for the total fees above what is listed on the spreadsheet, but it does appear that the trial court took the amount that it awarded from this spreadsheet and the associated testimony.

## A. Mootness

We begin by addressing appellees' contention that Laurel's complaints regarding the attorney's fees award have been rendered moot by the fact that she paid the fees to appellees postjudgment. Laurel acknowledges making the payment but contends that she did so only to halt the accrual of postjudgment interest and while vigorously pursuing this appeal. We agree with Laurel that her payment did not render her complaints moot.

Usually, when a judgment debtor voluntarily satisfies the judgment, the case becomes moot and the debtor waives any right to appeal. *Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 787 (Tex. 2006). The rationale behind the voluntary payment rule is "to prevent a party who voluntarily satisfies a judgment from later changing his or her mind and appealing." *Id*. In other words, it

"precludes a party from 'pay[ing] out his money, leading the other party to act as though the matter were closed, and then be in the position to change his mind and invoke the aid of the courts to get it back.'" *Miga II*, 299 S.W.3d at 103 (quoting *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 768–69 (Tex. 2005)). Payment of a judgment, however, will not moot an appeal if the debtor timely and clearly expresses an intent to exercise the right of appeal and if appellate relief is not futile. *Marshall*, 198 S.W.3d at 787 (citing *Miga I*, 96 S.W.3d at 212). Moreover, a controversy is not mooted by a payment made under economic duress, such as the duress implied by the threat of statutory penalties and accruing interest. *See Miga I*, 96 S.W.3d at 211. But, a controversy is mooted if a judgment debtor satisfies a judgment and does not clearly express an intent to exercise the right of appeal. *Id.* at 211–12.

The trial court signed the final judgment in this case on March 25, 2022. Laurel filed a notice of appeal on April 11, 2022, and a motion for new trial raising the attorney's fees award as a key issue on April 20, 2022. Laurel additionally filed a motion requesting to be allowed to deposit funds (including to cover the attorney's fees) into the registry of the court pending appeal in lieu of providing a supersedeas bond.[1] The trial court denied this request on June 24, 2022 and again ordered Laurel to pay the amount awarded to appellees for attorney's fees. Laurel paid the court reporter's fee on May 11, 2022. The parties mediated the case on July 5, 2022 pursuant to an order from this court but did not settle. Appellees assert that Laurel paid the attorney's fees on July 7, 2022, but they have offered no evidence supporting this date or detailing the transaction.

The best course of action for a party making a payment on a judgment who

---

[1] Unfortunately, this motion does not appear in the appellate record; however, we are able to glean some information about it from appellees' response and the trial court's order on the motion, which do appear in the record.

intends to continue an appeal would be to explicitly reserve the right to appeal at the time of making the payment, preferably on the record. *See id* at 211. Here, we do not have any transmittal letter or other communication stating such intent contemporaneously with the making of the payment. Indeed, the parties offer no evidence or even assertions regarding the specifics of that transaction. However, the fact that Laurel was clearly pursuing the appeal—having filed documents in the trial court and this court, paid the court reporter, and refused to settle during mediation—and had indicated a desire to halt postjudgment interest and not have to obtain a supersedeas bond by paying the funds into the court's registry, indicates a clear desire to continue the appeal despite making the payment. *See, e.g.*, *Robbins v. Robbins*, 550 S.W.3d 846, 853–54 (Tex. App.—Beaumont 2018, no pet.) (holding party's compliance with judgment did not moot appeal where party had filed a notice of appeal among other actions expressing an intent to continue the appeal). Under these facts, appellees could not have been misled about Laurel's intentions. *See Miga II*, 299 S.W.3d at 103–04. Because Laurel paid the attorney's fees in order to avoid the accrual of interest and having expressed the clear intent to continue the appeal, this issue was not rendered moot. *See Miga I*, 96 S.W.3d at 211–12.

### B. Governing Law

To be entitled to an award of attorney's fees, a prevailing party must prove that (1) recovery of attorney's fees is legally authorized, and (2) the requested fees are reasonable and necessary for the legal representation, such that the award will compensate the party for losses sustained in the litigation process. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 487 (Tex. 2019). Attorney's fees in Texas are recoverable only when provided for by statute or the parties' contract. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310 (Tex.

2006). Under Civil Practice and Remedies Code section 38.001(8), a person may recover reasonable attorney's fees from an individual in addition to the amount of a valid claim and costs if the claim is for the breach of an oral or written contract. Tex. Civ. Prac. & Rem. Code § 38.001(8); *Tex. Constr. Specialists, L.L.C. v. Ski Team VIP, L.L.C.*, 659 S.W.3d 67, 79 (Tex. App.—Houston [14th Dist.] 2022, pet. denied). While attorney's fees may be recoverable in a declaratory judgment action, the Declaratory Judgments Act may not be used "as a vehicle to obtain otherwise impermissible attorney's fees." *MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 669–70 (Tex. 2009); *see also Tanglewood Homes Ass'n v. Feldman*, 436 S.W.3d 48, 69 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Generally, "a claimant must segregate legal fees accrued for those claims for which attorney's fees are recoverable from those that are not." *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017) (citing *Chapa*, 212 S.W.3d at 314).

Several of Laurel's arguments challenge to some degree the legal sufficiency of the evidence to support the attorney's fees award. When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827.

### C. Analysis

Appellees based their request for attorney's fees on their claims for declaratory judgment, breach of contract, and enforcement of the MSA, as well as on their claims relating to the litigation of the Tract 15 matter. We will discuss each of these bases, but we begin by noting, as Laurel urges, that the MSA indeed did settle the issue of attorney's fees—at least up to the execution of the MSA and

13

excepting any fees relating to the Tract 15 dispute and certain other matters. As set out above, the parties entered the MSA with the "intention . . . to resolve all claims and causes of actions that currently exist" between the parties, with express exceptions relating to Tract 15, "any future claim for an accounting," and "the cattle operation of the parties." Appellees' request for attorney's fees in their pleadings was certainly a part of, and based upon, the claims in the dispute between the parties; this language therefore indicated an intention to resolve those attorney's fees, except for fees related to Tract 15 or any future accounting or cattle operation claims. Accordingly, the MSA resolved the request for fees relating to claims that were resolved in the MSA.

## 1. Declarations

Turning to the declaratory judgment basis for attorney's fees, the trial court made several declarations in the judgment that were expressly responsive to appellees' requests for declaratory relief. Specifically, the court held that (1) each of the sisters held an undivided 1/4 interest in the property; (2) appellees, combined, owned the majority of all undivided interests; (3) the language of the gift deeds created rights of first refusal and established majority rule; (4) the majority rule clauses required each sister to join in a conveyance of any portion of the property to which a majority agreed, provided any sister could also exercise a right of first refusal; (5) Laurel was obligated to join in appellees' sale of all or part of the property; and (6) Laurel's failure to join the sale of Tract 15 was a breach of the Tract 15 conditional gift deed, thereby making her liable "for damages resulting from such breach, including specific performance obligating [her] to join . . . in the sale of Tract 15."

As Laurel again urges, except for the declarations relevant to the Tract 15 issue, none of these points were being contested after execution of the MSA, to the

14

extent they were ever actively contested. Indeed, the MSA itself contained a provision stating that "[t]he parties hereby stipulate that the terms of the Gift Deeds (right of first refusal and majority rule clauses as described in the Lawsuit) are valid and enforceable." These were nonissues after the MSA was executed, except as they related to Tract 15. Appellees point to no evidence that they were required to expend attorney's fees to procure these declarations, other than to the extent they are relevant to the Tract 15 dispute.[2]

### 2. Breach of Contract

Next, we address the breach of contract basis for attorney's fees. Appellees suggest that they continued to press their breach of contract claims even after execution of the MSA. This is certainly true for the breach claim regarding Tract 15. Indeed, in the judgment, the trial court expressly held that Laurel had committed a breach by failing to join in the sale of Tract 15 and granted appellees specific performance relief by ordering her to execute the closing documents and pay her share of closing expenses. *See Boyaki v. John M. O'Quinn & Assocs., PLLC*, No. 01-12-00984-CV, 2014 WL 4855021, at \*14 (Tex. App.—Houston [1st Dist.] Sept. 30, 2014, pet. denied) (mem. op.) (explaining that attorney's fees under section 38.001(8) can be supported by an award of specific performance);

---

[2] Appellees point out that the trial court signed an order at the start of trial stating that Laurel had stipulated to certain of the declarations appellees requested that subsequently made it into the judgment. Appellees then cite *Elliott v. Crosswater Yacht Club, L.P.* for the proposition that a unilateral stipulation on the eve of trial does not moot a request for attorney's fees in a declaratory judgment action. No. 14-15-00034-CV, 2016 WL 1719087, at \*6–7 (Tex. App.—Houston [14th Dist.] Apr. 28, 2016, no pet.) (mem. op.). *Elliott*, however, is readily distinguishable from the present case. The trial court's statement that Laurel had made stipulations was expressly based on her statements in her Second Amended Answer and Special Exceptions pointing out that the requested declarations were not being disputed. Indeed, as discussed in the text above, to the extent the declarations not relevant to the Tract 15 issue were ever disputed, they had been resolved in the MSA. This is not a situation where a party was attempting to moot claims on the eve of trial, as was the situation in *Elliott*; the claims here were mooted by the MSA to the extent they were ever in fact disputed.

*Rasmusson v. LBC PetroUnited, Inc.*, 124 S.W.3d 283, 287 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (holding that award of specific performance of arbitration agreement permitted recovery of chapter 38 attorney's fees and rejecting argument that monetary damages were required).

Other than the Tract 15 breach holding and the resulting award of specific performance, however, appellees do not point to any other express or implied holding of a breach of contract in the judgment or any relief awarded for such a breach. Our review of the judgment also does not reveal any such holding or award. Accordingly, the breach of contract claims not involving Tract 15 do not support the award of attorney's fees. *See Rasmusson*, 124 S.W.3d at 287.

### 3. Enforcement

Lastly, we turn to the enforcement of the MSA as a basis for the award of attorney's fees. Appellees could certainly be entitled to attorney's fees if they had pleaded that Laurel breached the MSA, the evidence supported that allegation, and the trial court found a breach and awarded appellees damages or specific performance as a result. *See, e.g., Am. Fisheries, Inc. v. Nat'l Honey, Inc.*, 585 S.W.3d 491, 505 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("[A]s with other breach of contract actions, the unjustified breach of a settlement agreement exposes the breaching party to attorney's fees for enforcement of the contract.") (quoting *Garcia v. Harding*, 545 S.W.3d 8, 12 (Tex. App.—El Paso 2017, no pet.)).

In their live petition at the time of trial, appellees noted that Laurel had objected to the date the appraiser had used in conducting the appraisal of one of the three parcels of land he was asked to appraise, and therefore, the appraisal of the other two parcels had been delayed. Appellees requested in the petition that the trial court determine the date for the appraisals and then conduct the "true-up"

16

calculation and partition of the properties as contained in the MSA. The MSA did not state a date for the appraisals. The trial court ordered the parties not to return to the mediator—despite the fact that the MSA required the parties to return to the mediator to resolve any disputes concerning the implementation of the MSA—and instead resolved the issue of the appraisal date itself prior to trial.

In the section of the judgment entitled "Enforcement of Mediation Settlement Agreement," the court provides for the partition of the property "in accordance with the Parties' agreement as expressed in the" MSA. The trial court also ordered payment of the "True-Up Fee" as calculated based on the appraisals. These and other provisions in the judgment certainly incorporate and enforce the MSA; they are not, however, tantamount to a holding either that Laurel breached the MSA or that appellees were being awarded some form of relief. The parties had agreed in the MSA to a partition of the property they owned in common. The judgment effectuates that partition. A partition is not a proper basis for an award of attorney's fees. *See, e.g., Thompson v. O'Neal*, No. 05-23-00046-CV, 2024 WL 3198888, at *4 (Tex. App.—Dallas June 27, 2024, no pet.) (mem. op.).

It does not appear from the record either that appellees explicitly alleged a breach of the MSA or that the trial court found any such breach or awarded any relief as a result of any breach of the MSA.[3] Accordingly, the enforcement of the MSA in the final judgment does not support the award of attorney's fees to appellees.

### D. Conclusion

The only basis for the award of attorney's fees supported by the pleadings, evidence, and judgment is the dispute over Tract 15. As Laurel acknowledges,

---

[3] It is also worth noting that in their trial brief regarding the request for attorney's fees, appellees did not mention any alleged breach of the MSA as grounds for awarding fees.

appellees' attorney's fees evidence segregated the fees expended on the Tract 15 issue ($104,418). As discussed above, Laurel asserted that appellees could not recover attorney's fees for a breach related to Tract 15 because they received no actual damages as a result, but as also explained above, this is incorrect because appellees did receive specific performance for that alleged breach. *See Boyaki*, 2014 WL 4855021, at *14; *Rasmusson*, 124 S.W.3d at 287. Laurel makes no further argument regarding the Tract 15 attorney's fees; she does not otherwise contend that they are without legal basis or were not supported by sufficient evidence.[4] Accordingly, we sustain Laurel's third issue in part.

When an appellant complains that the evidence is insufficient to support a trial court's award of attorney's fees and we agree but conclude the evidence is sufficient to support an award of a lesser amount of fees, we may suggest a remittitur of the fees under Texas Rule of Appellate Procedure 46.3. *See, e.g.*, *Advanced Tech. Transfer & Intell. Prop. Grp. LLC v. Krenek*, 627 S.W.3d 540, 547 (Tex. App.—Houston [14th Dist.] 2021, no pet.); *Corral-Lerma v. Border Demolition & Env't Inc.*, 467 S.W.3d 109, 128 (Tex. App.—El Paso 2015, pet. denied). Here, because the evidence is legally and factually sufficient to support an award of attorney's fees to appellees but not in the amount stated by the trial court, we suggest to appellees a remittitur of $147,392.36, being the difference between the amount awarded ($251,810.36) and the maximum amounted supported by the evidence ($104,418). If within 15 days of this opinion's issuance, appellees accept the remittitur, we will reform the trial court's judgment and affirm it as so modified. If not, this portion of the judgment will be reversed and this cause will

---

[4] At one point in her briefing, Laurel asserts that the trial "court did not conclude that her failure to exercise her right [of first refusal] properly was a breach of contract." She is correct. However, the trial court did find that Laurel breached the gift deed clauses by refusing to join appellees' sale of Tract 15 to the Stasneys. Laurel makes no argument that this breach found by the trial court would not entitle appellees to attorney's fees, so we state no position on the matter.

be remanded for a new trial on the proper amount of attorney's fees for appellees regarding only the Tract 15 issue.

### III. Issues Concerning E.A.J.L.

We next turn to a consideration of Laurel's issues concerning E.A.J.L.'s participation in the lawsuit. In her first issue, Laurel contends that the trial court erred in failing to fully incorporate the MSA into the final judgment. Although this issue touches to some degree upon other matters discussed elsewhere in this opinion, it focuses on E.A.J.L. In her fifth issue, Laurel complains about the trial court ordering appellees to reimburse E.A.J.L. out of the attorney's fees awarded to appellees, and in her sixth issue, she contends that the trial court erred in denying her objection to E.A.J.L.'s participation in the case.

### A. Factual and Procedural History

The history of E.A.J.L.'s participation in this lawsuit is somewhat convoluted and will be recounted in some detail here. As discussed above, E.A.J.L. is a partnership formed by the four sisters to conduct business operations related to the property. The four sisters are the four partners in E.A.J.L. From early in the lawsuit, allegations were raised that involved E.A.J.L. to some extent, although, for much of the litigation, no claims were specifically made against it and it was not named as a party. The MSA, executed in May 2021, contained several provisions that relate to E.A.J.L., including stating that it would retain the water distribution equipment on certain properties as an asset, pay for the property appraisals, and continue to maintain the farm's landing strip, and that the parties would continue to have access to E.A.J.L.'s books and appellees would deposit $200,000 into E.A.J.L.'s general account. The MSA also stated that the parties would sign mutual releases, "[s]ave and except for . . . any future claim for an accounting for past business operations pertaining to E.A.J.L."

19

Then, in August 2021, Laurel filed an application for a temporary injunction requesting emergency relief relating to the business operations of E.A.J.L., including regarding whether it had or could have an ownership interest in certain real property and cattle and whether it could be used to pay a particular person's salary as well as certain fees for legal services. After a hearing on the application, the trial court entered an order that stated Laurel's "complaint affects the rights of E.A.J.L." On that basis, the court ordered Laurel to amend her pleadings and have E.A.J.L. served. In a second order, filed a week later, the court stated that it found that E.A.J.L. "is not a party and should be joined by [Laurel] or by the intervention of [the attorney] who represented he is counsel for E.A.J.L." In an amended application for an injunction filed the same day as the hearing and before the orders issued, Laurel listed E.A.J.L. as a defendant. E.A.J.L. then filed a one-page answer, asserting only a general denial.

Next, in her second amended counterpetition, Laurel indicated that she was nonsuiting any claims she may have raised against E.A.J.L. and insisted "[t]here are no active claims asserted in this petition against E.A.J.L." Laurel, however, also continued to assert several declaratory judgment claims in this pleading related to E.A.J.L., including that E.A.J.L. had no financial interest in the real property, was not permitted to deduct from its revenue legal fees and expenses related to any partition litigation, had no legal right to pay for legal services incurred by appellees in the Tract 15 litigation, and had no financial interest in paying for the partition of cattle herds.

In a supplemental answer to the counterpetition, appellees then called E.A.J.L. "a necessary party to Cross-Original Petition for Judicial Winding Up of a General Partnership and Texas Declaratory Judgment Act Claims filed by" Laurel. Appellees also filed a motion to join E.A.J.L. as a necessary party under Texas

Rule of Civil Procedure 39 in which they detailed the allegations Laurel had made concerning E.A.J.L. and specifically noted the declaratory judgment claims pertaining to E.A.J.L. that Laurel continued to pursue despite saying that she was nonsuiting claims against E.A.J.L. E.A.J.L. filed a response to the motion to compel joinder, insisting that it must be included as a necessary party under Rule 39 in order to address, by final judgment, Laurel's "anger towards and frustrations with her sisters and the partnership." E.A.J.L. also stated that it was a necessary party in order to wind down the business, but it is unclear that any party was seeking a winding down of E.A.J.L. at that time. In her own response, Laurel again stated that there were no live claims against E.A.J.L. because the only issue remaining to be tried in the lawsuit that had not been tried or reserved involved the right of first refusal on Tract 15.

Laurel then also filed a motion asking the court to hold trial only on the Tract 15 dispute and apparently arguing, among other things, that any issues pertaining to E.A.J.L. were actually issues between the partners in E.A.J.L. and not matters against E.A.J.L. itself. In its order denying this motion, the trial court ordered "that all issues that are, or could be, in controversy between [appellees, E.A.J.L., and Laurel] be tried together in this Cause in one trial."

Although the language used is somewhat difficult to parse, it appears that in her third amended counterpetition, Laurel again attempted to nonsuit "any claims or causes of action" that the trial court might find to be raised by Laurel against E.A.J.L. in the petition or any other live pleading. That section of the petition concludes by stating, "There are no active claims asserted in this petition against E.A.J.L."

An attorney representing E.A.J.L. thereafter participated at trial. During trial but before close of her case in chief, Laurel filed a "Notice of Partial Nonsuit

Without Prejudice" in which she specifically listed the sections of her third amended counterpetition that referenced E.A.J.L. and stated that she was nonsuiting those claims pursuant to Texas Rule of Civil Procedure 162.

In the trial court's final judgment, E.A.J.L. is referenced several times, mostly in regards to enforcement of the MSA. In the introductory section of the judgment, it states that "disputes have arisen between [appellees and Laurel] regarding . . . operation of . . . E.A.J.L." In the section concerning enforcement of the MSA, the court awarded E.A.J.L. an easement of access to operate the water distribution system. Under the heading, "Other Provisions," it states that "E.A.J.L. . . . shall continue to maintain the landing strip" and orders appellees to deposit a $200,000 check currently in E.A.J.L.'s safety deposit box into its general operating bank account. Under the heading "E.A.J.L. Wendt Farms," the judgment bars appellees and Laurel from interfering with any other parties access to E.A.J.L.'s bank accounts. More importantly, under this section, it states that "all claims or causes of action that were brought, or which could have been brought in the course of this litigation . . . by appellees or Laurel . . . against [E.A.J.L.], its partners, employees, agents, or attorneys, to the extent not granted herein, are DISMISSED." Under the heading "Defendant's Counterclaims," the judgment states that "[t]o the extent not otherwise disposed of by this Judgment, it is further [ordered] that [Laurel] Take Nothing against [Appellees or E.A.J.L.] by reason of her counterclaims, crossclaims, or third-party claims plead or existing at the time this Judgment is entered." Lastly, in the section on attorney's fees, appellees were ordered to reimburse E.A.J.L. $120,577.50 out of the fees they were to receive from Laurel.

**B. Relevant Law**

The trial court apparently made its ruling requiring E.A.J.L.'s participation

pursuant to Rule of Civil Procedure 39(a), which provides as follows:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

It is not entirely clear from the record, however, why the trial court made its ruling. Neither the court nor any party has suggested that complete relief could not be accorded between the parties, who were the four partners in E.A.J.L., absent E.A.J.L.'s participation as a party. E.A.J.L. itself did not make any claims in the lawsuit or otherwise expressly claim any legally cognizable interest in the proceedings. E.A.J.L. was not a party to the MSA. *See generally Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 913 (Tex. 2017) ("Rule 39 does not require joinder of persons who potentially could claim an interest in the subject of the action; it requires joinder, in certain circumstances, of persons who actually claim such an interest."); *Conrad Constr. Co., Ltd v. Freedmen's Town Pres. Coal.*, 491 S.W.3d 12, 16 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("Although Rule 39 provides for joinder in mandatory terms, there is no arbitrary standard or precise formula for determining whether a particular person falls within its provisions.").

Regardless, it is clear that by the time the trial court rendered its judgment, there were no extant claims either by or against E.A.J.L. or directly involving it. The only such claims that had been made at the time trial began—certain of Laurel's claims for declaratory judgment against appellees that referenced

23

E.A.J.L.—were nonsuited during trial. *See* Tex. R. Civ. Pro. 162 ("At any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit . . . ."); *Villafani v. Trejo*, 251 S.W.3d 466, 468–69 (Tex. 2008) (discussing party's "absolute right to nonsuit their own claims" and explaining that "a plaintiff decides which of its claims to pursue or abandon").

### C. Analysis of Laurel's Issues

#### 1. First Issue

We turn now to the issues Laurel raised concerning E.A.J.L.'s participation. Under her first issue, Laurel challenges the propriety of the following two clauses in the final judgment: (1) "all claims . . . that were brought, or which could have been brought . . . against [E.A.J.L.], its partners, employees, agents, or attorneys, to the extent not granted herein, are DISMISSED," and (2) "[t]o the extent not otherwise disposed of by this Judgment, it is further [ordered] that [Laurel] Take Nothing against [Appellees or E.A.J.L.] by reason of her counterclaims, crossclaims, or third-party claims plead or existing at the time this Judgment is entered." Laurel challenges both the inclusion of E.A.J.L. in these clauses and the use of language dismissing or ordering a take-nothing judgment on unpleaded claims. We can find no justification for including this type of uber res judicata language in the judgment.[5] Res judicata is an affirmative defense that "bars lawsuits that arise out of the same subject matter as a prior suit when, with the use

---

[5] Such language may be appropriate in certain circumstances, such as when the parties request it after entering a broad settlement agreement. *See, e.g.*, *Carr v. Inland Marine Serv., Inc.*, No. 09-21-00086-CV, 2022 WL 318437, at *1 (Tex. App.—Beaumont Feb. 3, 2022, no pet.) (mem. op.); *Litton Loan Servicing, L.P. v. Dubbert*, No. 01-10-00864-CV, 2011 WL 768777, at *1 (Tex. App.—Houston [1st Dist.] Mar. 3, 2011, no pet.) (mem. op.). The MSA in this case did not settle all possible claims between the parties and, in fact, expressly reserved "any future claim for an accounting for past business operations of E.A.J.L."

of diligence, that subject matter could have been litigated in the prior suit." Tex. R. Civ. P. 94; *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). Laurel contends that the question of res judicata on her unpleaded claims is not ripe, and we agree. The language in the judgment violates Laurel's right to determine what claims she is raising in this lawsuit. *See Villafani*, 251 S.W.3d at 469; *see also* Tex. R. Civ. P. 301 (requiring that a judgment must conform to the pleadings).

The trial court erred in including the language in the judgment dismissing or ordering a take-nothing judgment on claims that were not pleaded in this case. The trial court also erred in dismissing or entering a take-nothing judgment on claims Laurel may have had against E.A.J.L., "its partners, employees, agents, or attorneys," as there were no such claims pleaded in this case other than those against appellees, which were otherwise disposed of in the judgment. We will modify the judgment to remove this language. Laurel's first issue is sustained to the extent it complains about the identified language.

## B. Fifth Issue

In her fifth issue, Laurel challenges the portion of the judgment that ordered appellees to reimburse E.A.J.L. $120,577.50 out of the attorney's fees that Laurel was ordered to pay to appellees. Although Laurel's initial brief on this issue is somewhat scattershot regarding what she is arguing and what relief she is requesting, her reply brief focuses on the fact there were no live claims that could have supported a reimbursement award to E.A.J.L., and she seeks to have the award removed from the judgment.

Appellees first argue that the reimbursement award was the trial court's attempt to provide a "just and equitable" solution to the fact that while Laurel should have to pay appellees' attorneys fees, it should also be recognized that

E.A.J.L. had actually previously paid some of appellees' attorney's fees.[6] While this may be an accurate reading of the trial court's intent, there was no live request at the time the judgment was entered from any party regarding this reimbursement. As a general rule, trial court's may not grant unrequested relief. *See* Tex. R. Civ. P. 301; *In re M.B.G.*, No. 05-23-00505-CV, 2024 WL 1925871, at *3 (Tex. App.—Dallas May 2, 2024, no pet.) (mem. op.) ("Because Texas is a 'fair notice' state, which means that all parties are entitled to fair notice of a claim, a trial court may not grant relief to a person who has not requested such relief in a live pleading."). While reimbursement of the fees E.A.J.L. paid on behalf of appellees may well be just and equitable, there was no basis for doing so in this litigation.

Appellees additionally question whether Laurel can prove that any harm resulted to her from this reimbursement award to E.A.J.L. *See generally* Tex. R. App. P. 44.1(a) (providing that no civil judgment may be reversed on appeal unless the error complained of either probably caused the rendition of an improper judgment or prevented the appellant from properly presenting the case on appeal). Laurel argues in response that the error was not harmless because it could impact her future ability to seek to recover funds that she believes appellees improperly removed from E.A.J.L. On this point, she again notes that the MSA expressly reserved "any future claim for an accounting for past business operations of E.A.J.L." and that she disputes the amount of the fees that E.A.J.L. paid on behalf of appellees.

We agree with Laurel. The final judgment improperly awarded a reimbursement of $120,577.50 to E.A.J.L. from appellees' recovery of attorney's

---

[6] Appellees cite the provision of the Declaratory Judgments Act permitting a court to award costs and necessary attorney's fees as are equitable and just, *see* Texas Civil Practice and Remedies Code section 37.009, and suggests that the reimbursement in question was not so much an award to E.A.J.L. as a "just and equitable" limitation on the attorney's fees awarded to appellees.

fees. Accordingly, we sustain Laurel's fifth issue and will modify the judgment to remove the reimbursement award.

### C. Sixth Issue

In her sixth issue, Laurel raises several of the contentions already discussed and resolved in the previous two issues regarding E.A.J.L.'s participation in the lawsuit. She complains that the trial court failed to enforce the reservation of accounting claims in the MSA and about the judgment language dismissing or awarding a take nothing judgment on all claims she could have brought or that were existing involving E.A.J.L. She also notes that while participating in the trial, E.A.J.L. made objections to testimony and documents that were damaging to appellees' legal position. Laurel does not, however, appear to request any additional relief under this issue that we have not already granted under the previous two E.A.J.L. issues. Accordingly, we overrule the sixth issue as moot.

### IV. Supersedeas Bond

In issue four, Laurel asserts that the trial court erred in ordering her to post a supersedeas bond in the amount of $1,599,999.99 in the event that she chose to appeal the judgment. Laurel states that she did not request to supersede any part of the judgment. It is undisputed, however, that Laurel has never provided any bond in this case and that she has not been prevented from appealing any issues in the case. In the single paragraph she devotes to this issue in her brief, Laurel neither explains on what basis she believes the trial court erred nor states how she has been harmed by any such error. *See* Tex. R. App. P. 38.1(i) (providing that an appellant's brief must contain clear and concise argument for the contentions made); *Saba Zi Expl., L.P. v. Vaughn*, 448 S.W.3d 123, 130 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (explaining that we will not reverse a civil judgment unless harm resulted from the error) (citing Tex. R. App. P. 44.1(a)). Further,

27

beyond general citations to the rules governing supersedeas bonds—*see* Texas Civil Practice and Remedies Code chapter 52 and Texas Rule of Appellate Procedure 24.2—Laurel does not cite any relevant authority from which we could glean the intent behind this issue. *See* Tex. R. App. P. 38.1(i) (providing that an appellant's brief must contain appropriate citations to relevant authority).

In her reply brief, Laurel additionally asserts that the record does not show how the court calculated the amount of the bond, suggests the amount of the bond was punitive, and complains that the trial court did not hear evidence or argument on the issue. She still does not, however, explain how or why the amount of the bond was erroneous; moreover, she does not cite any place in the record where she may have preserved these issues in the trial court. *See id*. 33.1(a) (governing preservation of issues for appeal). Regarding harm, Laurel asserts that she did not voluntarily tender the legal fees or the "true-up fee" to appellees but did so to avoid interest and "other collection events" such as enforcement by contempt. Laurel does not, however, attempt to explain how it relates to the amount set for the bond. We will not make Laurel's arguments for her. *See Rogers v. City of Hous.*, 627 S.W.3d 777, 787 (Tex. App.—Houston [14th Dist.] 2021, no pet.). We overrule her fourth issue.

## V. Headquarters Tract Boundary Description

In her seventh issue, Laurel asserts that the trial court erred in the language it used in the judgment to describe the Headquarters Tract lease that Laurel was required to enter into with Frank Stasney. Specifically, Laurel argues that (1) no evidence supported the judgment's description of the property to be leased, and (2) the judgment failed to include restrictions on the duration of the lease contained in the MSA. We use the same standards set forth above in reviewing the legal sufficiency of the evidence. *See City of Keller*, 168 S.W.3d at 822.

The MSA required that

Laurel will lease on an annual basis to Frank Stasney the headquarters improvements—barns and shops, located on Tract 10 . . . for as long as Tract 7 is used by [appellees] or their first transferee (or their tenants) for rice growing; provided however, routine crop rotation will not constitute as cessation of rice growing.

The judgment discussed the "Headquarters Tract" as follows:

It is further ORDERED, ADJUDGED, and DECREED, that Frank Stasney is awarded the exclusive use of the area known as the Headquarter's [sic] Tract (described generally as access to and from Ricefield Road and said area being approximate six and a half (6.5) acres of land out of Tract 10 having a northern boundary fronting on and having a street address of 11913 Ricefield Road, Beasley, Texas 77417, and its southern boundary being the common boundary line with adjacent McNeil Unitrust tract, and being approximately 250 feet in width beginning at the driveway entrance to the Headquarters Tract and extending northeastward along Ricefield Road approximately 250 feet with reference to the existing row crop turns on the east and west boundaries of the Headquarters Tract.) [sic]; and possession, use, and quiet enjoyment (as a tenant) of the barns, workshop, and premises located on the Headquarters Tract previously utilized by E.A.J.L Wendt Farms for farming operations. . . .

Nothing in this Order shall prevent the Defendant and Stasney from entering into a lease agreement consistent with this Judgment or containing such other terms and conditions as may be mutually agreed.[7]

**A. Property Description**

As stated, Laurel first challenges the sufficiency of the evidence to support the trial court's description of the Headquarters Tract in the judgment. Specifically, in her initial brief, Laurel argues that the "common boundary line" with the McNeil tract is a disputed boundary that cannot be resolved without further

___

[7] We omit from the quoted language provisions dealing with the financial aspects of the lease as Laurel raises no complaint regarding them.

factfinding. She does not, however, cite any evidence to support the assertion that the line was disputed. She then asserts that "[n]o evidence on the boundary line of the tract was offered at trial," although it is not clear whether this refers specifically to the boundary with the McNeil tract or the entire boundary of the Headquarters Tract. In her reply brief, however, Laurel clarifies that she is asserting that "[t]estimony and documentary evidence were not offered a[s] to the boundaries of the headquarters tract."

At trial, both Evelyn Wendt and Frank Stasney testified regarding the Headquarters Tract. They both described it as a small collection of buildings used for farming the property. The record reflects that they both also physically pointed the tract out to the court as being within Tract 10 on a plat, although the record does not indicate exactly where they pointed. And both identified plaintiff's exhibit 44 as being a proposed lease for the Headquarters Tract, which described the property as

> Approximately ten (10) acres containing two barns and one workshop (above ground storage tanks belong to Tenant) and known as the Headquarter Improvements, located at 11913 Ricefield Road, Beasley, Texas 77417, Texas, including access to and from Ricefield Road, and being those improvements described in [the MSA]. Said Leased Premises being out of and a part of [Tract 10].

Stasney additionally described the Headquarters Tract as follows: "there's approximately 5 acres right here, off Ricefield Road, and it goes from, like, the road, back to the McNeill property line right here."

Laurel complains in her reply brief that no evidence was given regarding the Headquarters Tract's metes and bounds, but she does not cite any authority suggesting that such testimony was required or that the judgment was required to include metes and bounds or any other form of description beyond what was used.

30

*See* Tex. R. App. P. 38.1(i). Given that the MSA required Laurel to lease "the headquarters improvements—barns and shops, located on Tract 10" to Stasney and the testimony, documentary, and demonstrative evidence at trial explained to the trial court as factfinder where those improvements were on Tract 10 and Laurel did not offer any controverting evidence, we conclude that the evidence was legally and factually sufficient to support the trial court's description of the property to be leased in the judgment. Indeed, the judgment ordered the leasing of 3 1/2 acres less than what was listed in the proposed lease. We overrule Laurel's seventh issue to the extent it challenges the sufficiency of the evidence on the description of the Headquarters Tract.

### B. Rice Growing

Laurel additionally complains that the judgment did not contain language limiting the duration of the Headquarters Tract lease requirement based on the continuation of rice growing on Tract 7. As set forth above, the MSA included such a limitation but the final judgment did not. During oral argument, appellees' counsel conceded that the omission of such language in the judgment was an oversight. We agree. A trial court generally has a ministerial duty to enforce a valid Rule 11 agreement. *See Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Hum. Servs.*, 540 S.W.3d 553, 560 (Tex. 2018) (citing *Fortis Benefits v. Cantu*, 234 S.W.3d 642, 651 (Tex. 2007)). The trial court erred here in not including the rice growing limitation in the final judgment language concerning the Headquarters Tract lease.

Laurel's seventh issue is overruled in part and sustained in part. The trial court's judgment will be modified to include language limiting the duration of the requirement to lease the Headquarters Tract to Stasney "for as long as Tract 7 is used by [appellees] or their first transferee (or their tenants) for rice growing;

31

provided however, routine crop rotation will not constitute as cessation of rice growing."

## VI. Value of "True-up" Compensation

And, in her eighth and final issue, Laurel challenges the amount that the trial court determined for the "true-up" payment that she was required to make to appellees. As set forth above, the trial court ordered Laurel to pay $214,706.61 to each of her three sisters for a total $644,119.83 "True-up Fee" for the difference in value of the property she received upon partition as compared to the value of the properties the other sisters received.

We use the same standards set forth above in reviewing the legal sufficiency of the evidence. *See City of Keller*, 168 S.W.3d at 822. In a factual-sufficiency challenge, we consider and weigh all the evidence, both supporting and contradicting the finding. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We will set aside a finding for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id*. at 407.

Laurel specifically challenges the value that was assigned to Tract 2 by the appraiser, a tract she received in the division. As Laurel points out, the property description for Tract 2 in the appraiser's report includes a statement that "[t]he property is being considered under the Extraordinary Assumption that the terms of the current access easement being negotiated and that the location of the easement will not move under any conditions of a renegotiation of the terms." Laurel argues that there was no evidence offered to show that the owners of the land over which an access easement would pass had signed an easement and that the appraiser testified there was no recorded easement for that tract and there was a "gap" in what could be an easement. Laurel concludes that the nonexistence of an easement

would negatively affect the value of the tract and either the easement should be shown to exist or there needs to be a reevaluation.

As appellees point out, however, the appraiser also testified that he found no indication in his research that there would be any problem in obtaining an easement, he brought the lack of a recorded easement to everyone's attention, "and ultimately, there was no problem in getting an easement established." He further explained that in doing an appraisal, when it is reasonable and probable that certain things will happen in regard to a property, an appraiser can consider such things in calculating the highest and best use of the property. He concluded that if someone else had done the appraisal, they would have come to the same conclusion. Laurel did not offer any evidence controverting the appraiser's valuation or testimony. Laurel has not established that the trial court erred in accepting the appraiser's valuation of Tract 2 or in it's calculation of the "true-up" payment. Accordingly, we overrule her eighth issue.

### *Disposition*

Because we have sustained, at least in part, Laurel's first, third, fifth, and seventh issues, we will make several modifications to the trial court's final judgment. In regards to her first issue, we modify the judgment by deleting the sentence under the heading "E.A.J.L. WENDT FARMS" that begins with "[i]t is further ORDERED" and ends with "are DISMISSED." We further replace the sentence under the heading "DEFENDANT'S COUNTERCLAIMS" with the following sentence: "To the extent not otherwise disposed of by this Judgment, it is further ORDERED, ADJUDGED, and DECREED that Defendant Take Nothing against Plaintiffs by reason of her counterclaims, crossclaims, or third-party claims."

Based on the fifth issue, we remove the language requiring appellees to

reimburse E.A.J.L. $120,577.50 from the award of attorney's fees it was to receive from Laurel. In regards to the seventh issue, we modify the portion of the final judgment regarding the lease of the Headquarters Tract to Frank Stasney by adding the following language to the end of the first sentence in that section: "for as long as Tract 7 is used by Plaintiffs or their first transferee (or their tenants) for rice growing; provided however, routine crop rotation will not constitute as cessation of rice growing."

Lastly, regarding Laurel's third issue, we reverse the portion of the trial court's judgment ordering Laurel to pay appellees $251,810.36 in attorney's fees and suggest a remittitur of $147,392.36. If within 15 days of this opinion's issuance, appellees file an acceptance of the remittitur with the clerk of this court, we will reform the trial court's judgment so as to award appellees attorney's fees of $104,418 and affirm the remainder of the judgment as modified. If not, this portion of the judgment will be reversed and this cause will be remanded for a new trial only on the proper amount of attorney's fees for appellees regarding the Tract 15 issue. *See Advanced Tech. Transfer*, 627 S.W.3d at 547–48.

/s/    Frances Bourliot
Justice

Panel consists of Chief Justice Christopher and Justices Bourliot, and Hassan.